1  Matthew D. Resnik (SBN 182562)
2  matthew@srhlawfirm.com
   David M. Kritzer (SBN 170545)
3  david@srhlawfirm.com
4  SIMON RESNIK HAYES LLP
   15233 Ventura Blvd., Suite 250
5  Sherman Oaks, CA 91403
6  Tel: (818) 783-6251
   Fax: (818) 783-6253
7

8  Attorney for Debtors/Plaintiffs,
9  Rodolfo Rosales and Rosa Maria Hinojosa

10              **UNITED STATES BANKRUPTCY COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12  In re                          )  Bankruptcy Case No. 1:17-bk-10482-MT
13  RODOLFO ROSALES,               )  Adversary Case No.
                                   )
14  ROSA MARIA HINOJOSA,           )  Chapter 13
                                   )
15          Debtors.               )
                                   )
16                                 )  **COMPLAINT FOR:**
                                   )
17  _____  )
                                   )  1.  **VIOLATION OF CALIFORNIA**
18  RODOLFO ROSALES,  ROSA MARIA   )      **HOMEOWNER    BILL    OF**
    HINOJOSA,                      )      **RIGHTS [Cal. *Civ. Code* §§**
19                                 )      **2920.5, *et seq.*];**
            Plaintiffs,            )  2.  **WRONGFUL FORECLOSURE;**
20  vs.                            )  3.  **NEGLIGENCE;**
                                   )  4.  **JUDGMENT TO CANCEL**
21                                 )      **TDUS;**
    NEW PENN FINANCIAL LLC, A      )  5.  **QUIET TITLE;**
22  Delaware Limited Liability Company ) 6.  **DECLARATORY RELIEF;**
    dba SHELLPOINT MORTGAGE        )  7.  **UNLAWFUL BUSINESS**
23  SERVICING; MTC FINANCIAL, INC., )      **PRACTICES [Cal. Bus. & Prof**
24  A California corporation doing business )  **Code §17200, et seq.]**
    as TRUSTEE CORPS; THE BANK OF  )
25  NEW YORK MELLON fka THE BANK   )
    OF NEW YORK, (hereinafter      )
26                                 )
    'BONYM") as Trustee for THE    )
27                                 )
    CERTIFICATEHOLDERS OF THE      )
28

**ADVERSARY COMPLAINT**

CWABS, INC. ASSET-BACKED )
CERTIFICATES, SERIES 2005-BC5; )
DUKE PARTNERS II, LLC, A Delaware)
Limited Liability Company; All Persons )
Or Entities Unknown Claiming Any )
Legal Or Equitable Right, Title, Estate, )
Lien, Or Interest In The Property )
Described In The Complaint, Or Any )
Cloud On Title Thereto and Does 1 to 10,)
Inclusive, )
                                        )
_____Defendants._____

**COME NOW DEBTORS/PLAINTIFFS BY AND THROUGH THEIR
UNDERSIGNED ATTORNEYS, AND BRING THIS COMPLAINT AGAINST
DEFENDANTS, AND ALLEGE UPON INFORMATION AND BELIEF AS
FOLLOWS:**

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over the instant Adversary Proceeding pursuant to 28 U.S.C. §§157(a) and 1334, and Rule 7001 of the Federal Rules of Bankruptcy Procedure.

2.      This Adversary Proceeding is a core proceeding as defined under 28 U.S.C. §§157(a)(2)(E) and (K).

3.      Venue is proper in this Court pursuant to 28 U.S.C. §1409(a).

4.      The Debtors commenced their bankruptcy case by filing a voluntary petition under Chapter 13 of the Bankruptcy Code on February 24, 2017.

## PARTIES

5.      **Plaintiffs, RODOLFO ROSALES** (hereinafter "ROSALES") and **ROSA HINOJOSA** (hereinafter "HINOJOSA")(collectively "Plaintiffs") are now, and at all times relevant to this Complaint, were individuals residing in the County of Los

**ADVERSARY COMPLAINT**

Angeles, and the former owners and residents of real property commonly known as **7921 BAKMAN AVENUE, SUN VALLEY, CALIFORNIA 91352; APN 2314-014-023** (hereinafter the "Subject Property").

6.      Plaintiffs are informed and believe, and based upon such information and belief, thereon allege, that at all times hereinafter mentioned, **Defendant, NEW PENN FINANCIAL LLC, A Delaware Limited Liability Company dba SHELLPOINT MORTGAGE SERVICING** (hereinafter "SHELLPOINT") a limited liability company duly organized and existing under the laws of the state of its formation, and conducting business in the County of Los Angeles, State of California. Plaintiff is further informed and believes, and based upon such information and belief, thereon alleges, that at all times hereinafter mentioned NEW PENN FINANCIAL, LLC was conducting business under the fictitious name SHELLPOINT MORTGAGE SERVICING.

7.      Plaintiffs are informed and believe, and based upon such information and belief, thereon allege, that at all times hereinafter mentioned, **Defendant, MTC FINANCIAL, INC., A California corporation doing business as TRUSTEE CORPS** (hereinafter "TRUSTEE") is and was a herein a corporation duly organized and existing under the laws of the State of California, and conducting business in the County of Los Angeles, State of California under the fictitious name of TRUSTEE CORPS.

8.      Plaintiffs are informed and believe, and based upon such information and belief, thereon allege, that at all times hereinafter mentioned, **Defendant, THE BANK OF NEW YORK MELLON fka THE BANK OF NEW YORK,** (hereinafter 'BONYM") as Trustee for **THE CERTIFICATEHOLDERS OF THE CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2005-BC5** (hereinafter collectively the "TRUST"), is and was a National Association organized and existing under the laws of the United States, and conducting business in the County of Los Angeles, State of California. Plaintiffs are informed and believe, and based upon such information and

**ADVERSARY COMPLAINT**

belief, thereon allege, that at all times hereinafter mentioned BONYM was operating in the capacity as trustee for the TRUST.

9.      Plaintiffs are informed and believe, and based upon such information and belief, thereon allege, that at all times hereinafter mentioned, **Defendant, DUKE PARTNERS II, LLC, A Delaware Limited Liability Company** (hereinafter "DUKE") a limited liability company duly organized and existing under the laws of the state of its formation, and conducting business in the County of Los Angeles, State of California.

10.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names.  Plaintiffs are informed and believe, and on that basis allege, that each of the Defendants designated herein as a DOE is responsible in some manner, way, form and to some extent for the events and occurrences referred to herein, and for the damages resulting to Plaintiffs.  At such times as Plaintiffs learn the true name and capacity of any Defendant named as a DOE herein, Plaintiffs will seek leave of court to amend this Complaint to identify said Defendant, and include accompanying charging allegations.

11.     Plaintiffs are informed and believe, and based upon such information and belief, thereon allege, that each Defendant named in this Complaint, including DOES, was at all times herein mentioned, and now is, the agent, servant, subsidiary, partner, member, associate, representative or employee of each of the other Defendants, including DOES, and all of the things alleged to have been done by the Defendants were done in the course and scope of agency, employment, service, subsidiary relationship, partnership, membership, association, or representative relationship, with knowledge and consent of their respective principals, employers, masters, parent corporations, partners, members, associates or representatives.  Plaintiffs are informed and believe, and based upon such information and belief, thereon allege, that each defendant named as a DOE is

**ADVERSARY COMPLAINT**

1  responsible for each and every obligation hereinafter set forth.

## SUBJECT REAL PROPERTY

12.    The real property which is the subject of this action (the "Subject Property") is a single-family, owner-occupied/primary residence house located at **7921 BAKMAN AVENUE, SUN VALLEY, CALIFORNIA 91352; APN 2314-014-023** in the County of Los Angeles, State of California, and legally described in the attached documents.

## VENUE AND JURISDICTION

13.    Venue is proper in this Court, as the Subject Property is located within its jurisdiction and damages exceed the jurisdictional limit of this Court.

## FACTUAL ALLEGATIONS

14.    In or around November 1989, Plaintiffs purchased the Subject Property.

## SUBJECT DEED OF TRUST

15.    Plaintiffs are informed and believe, and based upon such information and belief, thereon allege, that on or about May 14, 2005, Plaintiffs executed a Deed of Trust ("DOT") favor of WILMINGTON FINANCE ("WILMINGTON") for the Subject Property with a 30-year, Note in the amount of $285,000.00 from WILMINGTON (hereinafter the "subject loan").  A true and correct copy of the DOT for the subject loan, recorded with the Los Angeles County Recorder's Office on May 25, 2005 as Instrument Number 05-1221361 is attached hereto as **Exhibit "A"** and is incorporated herein by reference as though set forth in full.  Identified in the DOT as "Lender", and "Trustee" are WILMINGTON, and UNITED TITLE COMPANY (hereinafter "UNITED") respectively.

## ASSIGNMENT OF DEED OF TRUST

16.    Plaintiffs are informed and believe, and based upon such information and belief, thereon allege, that on or about September 28, 2012, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS")  purportedly

5

**ADVERSARY COMPLAINT**

transferred/sold the subject loan to BONYM as Trustee for the TRUST. (UNITED apparently remained as the trustee on the subject loan). A true and correct copy of the Assignment of Deed of Trust ("ADOT") recorded with the Los Angeles County Recorder's Office on October 18, 2012 as Instrument Number 20121581201 is attached hereto as **Exhibit "B"** and is incorporated herein by reference as though set forth in full.

## SUBSTITUTION OF TRUSTEE

17.    Plaintiffs are informed and believe, and based upon such information and belief, thereon allege, that on or about July 27, 2015 SHELLPOINT as servicer for BONYM purportedly substituted OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY ("OLD REPUBLIC") as Trustee for the subject loan in place of and instead of UNITED. A true and correct copy of the Substitution of Trustee ("SOT") recorded with the Los Angeles County Recorder's Office on July 30, 2015 as Instrument Number 20150927647 is attached hereto as **Exhibit "C"** and is incorporated herein by reference as though set forth in full.

## SUBSTITUTION OF TRUSTEE

18.    Plaintiffs are informed and believe, and based upon such information and belief, thereon allege, that on or about October 27, 2015, SHELLPOINT as servicer for BONYM purportedly substituted TRUSTEE as Trustee for the subject loan in place of and instead of UNITED. A true and correct copy of the Substitution of Trustee ("SOT2") recorded with the Los Angeles County Recorder's Office on November 5, 2015 as Instrument Number 20151354614 is attached hereto as **Exhibit "D"** and is incorporated herein by reference as though set forth in full.

## NOTICE OF DEFAULT

19.    Plaintiffs are informed and believe, and based upon such information and belief, thereon allege, that on December 9, 2015, TRUSTEE executed a Notice of Default ("NOD"), alleging arrearages on the subject loan of $18,274.18 as of December

**ADVERSARY COMPLAINT**

9, 2015.  A true and correct copy of the NOD recorded with the Los Angeles County Recorder's Office on December 11, 2015 as Instrument Number 20151560744 is attached hereto as **Exhibit "E"** and is incorporated herein by reference as though set forth in full.

## NOTICE OF TRUSTEE'S SALE

20.    Plaintiffs are informed and believe, and based upon such information and belief, thereon allege, that on or about October 21, 2016, TRUSTEE executed a Notice of Trustee's Sale ("NOTS") against the Subject Property, identifying a sale date of November 23, 2016 at 9:00 am.  A true and correct copy of the NOTS recorded with the Los Angeles County Recorder's Office on October 27, 2016, as Instrument Number 20161322984 is attached hereto as **Exhibit "F"** and is incorporated herein by reference as though set forth in full.  Plaintiff is informed and believes and based upon such information and belief, alleges that the sale was later postponed due to loan modification discussions between the parties presumably in accordance with The California Homeowners Bill of Rights ("HBOR") codified in *Civil Code* sections 2920.5, et seq.

## PLAINTIFFS' EFFORTS TO MODIFY THE SUBJECT LOAN

21.    Initially Plaintiffs had no difficulty making the payments on the subject loan to SHELLPOINT, which accepted each and every payment without incident or objection. Beginning in or about late-2016 as a result of financial difficulties beyond the borrower's control including a reduction in income for Plaintiffs which further complicated their efforts to make ends meet and their family's ability to make the payments on the subject loan, Plaintiffs contacted SHELLPOINT in order to explore the possibility of modifying the loan terms with the aim of keeping their home and in turn, SHELLPOINT suggested applying for a loan modification.

22.    Over the next few months Plaintiffs submitted various documents through their authorized agents to SHELLPOINT aimed at obtaining a loan modification.

**ADVERSARY COMPLAINT**

23.    During this time, Plaintiffs and their agents (Plaintiffs speak Spanish primarily so they used bilingual agents to assist them with them the process) repeatedly contacted SHELLPOINT, speaking with different representatives in order to discuss submitting a loan modification application. As a result of this initial contact Plaintiffs were invited to and did in fact submit a complete application and additional documents requested by SHELLPOINT for consideration.

24.    Over the next several weeks in December 2016, Plaintiffs were asked by SHELLPOINT to provide additional financial and personal information; oftentimes duplicative of what was already submitted, which they were told was required to consider their loan modification application. Thereafter Plaintiffs provided all requested information to SHELLPOINT and had not received any further requests for information from SHELLPOINT.

25.    On or about January 6, 2017, Plaintiffs received a letter from SHELLPOINT dated January 4, 2017 which informed them, among other things, that SHELLPOINT was "currently reviewing your mortgage for eligibility in one of Shellpoint's loss mitigation programs" and that, "Shellpoint will expedite it's evaluation process to determine your eligibility in advance of your scheduled foreclosure sate od 1/23/2017". A true and correct copy of the January 4, 2017 Letter is attached hereto as **Exhibit "G"** and is incorporated herein by reference as though set forth in full.

26.    Based upon the contents of this letter, Plaintiffs assumed that their application was therefore complete in January 2017 and, as a result the foreclosure process was apparently postponed while the application was being considered by SHELLPOINT. Moreover, Plaintiffs contacted SHELLPOINT via telephone and verified that the application was complete and was being reviewed and more importantly that the sale date was being postponed to accommodate the review.

27.    On or about February 13, 2017, Plaintiffs received a letter from

**ADVERSARY COMPLAINT**

SHELLPOINT dated February 10, 2017 which informed them for the first time that their application was apparently denied because Plaintiffs "did not provide us with the documents we requested." A true and correct copy of the February 10, 2017 Letter is attached hereto as **Exhibit "H"** and is incorporated herein by reference as though set forth in full.  This letter came as a complete surprise to Plaintiffs who had not received a request for additional documents after the January 4, 2017 letter advising that the application was being reviewed prior to the February 23, 2017 sale date and their subsequent conversations with SHELLPOINT that the application was complete and being reviewed.

28.    Plaintiffs then contacted SHELLPOINT and were again told that their account was being reviewed for a modification, that their application was complete, and not to worry about the sale date which would be postponed pending a decision on the application.

29.    Assuming that the February 10, 2017 letter is treated as a proper written denial of the Plaintiffs' application, the Plaintiffs would have been entitled to a thirty (30) day period to appeal the denial as mandated under the California Homeowner's Bill of Rights (hereinafter "HBOR"), specifically *California Civil Code* section 2923.6 as a precondition of proceeding with the foreclosure sale of the Subject Property. Therefore, the soonest that the sale could have taken place under the HBOR would be March 13, 2017.

## FORECLOSURE SALE AND TRUSTEE'S DEED UPON SALE

30.    On February 22, 2017 at an unknown time, ***despite the clear HOBR violations by failing to provide the mandated 30 day appeal period as provided for within California Civil Code* section 2923.6**, SHELLPOINT and TRUSTEE presumably foreclosed on property of the estate, the Subject Property.

31.    Plaintiffs are informed and believe, and based upon such information and

**ADVERSARY COMPLAINT**

belief, thereon allege that the Subject Property was sold to a third party buyer, DUKE for a price in excess of the balance owing on the subject loan.

32.    Plaintiffs are informed and believe, and based upon such information and belief, thereon allege that on February 28, 2017, TRUSTEE executed and issued a Trustee's Deed Upon Sale ("TDUS") in the name of the third party DUKE. A true and correct copy of the TDUS recorded with the Los Angeles County Recorder's Office on March 7, 2017 as Instrument Number 20170260876 is attached hereto as **Exhibit "I"** and is incorporated herein by reference as though set forth in full.

33.    Had Plaintiffs known that the sale was taking place despite the lack of a proper appeal period, they would have undertaken other methods to deal with the loan including curing the small arrearage on the loan by borrowing money from family or friends or filing this Chapter 13 bankruptcy petition sooner in order to reorganize the debt prior to the sale.

## **TENDER**

34.    When the basis for the challenge is not simply irregularities in the sale procedures, but also the validity of the foreclosure, then the tender rule is inequitable and shall not be applied. *See, e.g*., *Barrionuevo v. Chase Bank, N.A.,* (N.D. Cal. 2012). 2012 U.S. Dist. LEXIS 109935, at 11.*See, also, Glaski v. CALIBER, N.A.* (2013) 218 Cal.App.4th 1079, 1100 ("Tender is not required for the borrower under a deed of trust to prevail on a claim for wrongful foreclosure, cancellation of instruments, or quiet title where the foreclosure sale is void, rather than voidable.") In this case, Plaintiffs' allegations clearly rise above mere challenges to the sale procedure itself; Plaintiffs have alleged that Defendants clearly misrepresented the status of their loan and the loan modification process, and failed to comply with the statutory requirements prior to conducting the foreclosure sale.

**ADVERSARY COMPLAINT**

35.    ___More importantly, the HBOR does not require a tender as a condition of___ ___asserting a claim thereunder___. See, *Bingham v. Ocwen Loan Servicing, LLC*, 2014 WL 1494005, at *6 n.5 (N.D. Cal. Apr. 16, 2014) ("three recent state courts [sic] decisions refusing to require tender where plaintiffs brought dual tracking claims like those in this case.") (citing *Senigar v. Bank of Am.*, No. MSC13–00352 (Cal. Super. Ct. Feb. 20, 2013) (rejecting tender argument for a dual tracking and Section 2923.7 single-point-of-contact claim); *Pearson v. Green Tree Servicing*, No. 13–01822 (Cal. Super. Ct. Contra Costa Cnty. Sept. 10, 2013) (same); *Mojanoff v. Select Portfolio Servicing Inc.*, No. LC 100052 (Cal. Super. Ct. May 28, 2013) (finding that "the California Home Owner Bill of Rights . . . imposes no tender requirement")).

36.    As such, tender should not be required. Nevertheless, should the Court so deem one as necessary, Plaintiffs are able, ready and willing to tender the total sums necessary to cure the arrearages on and reinstate the subject loan.  They have access to sufficient money to do so, based on their own income as well as through their extensive network of relatives and friends.

37.    **STANDING -** At a minimum the adversary proceeding is a "related to," non-core bankruptcy proceeding as the non-exempt proceeds from judgment, if any, are subject to administration by the chapter 13 trustee in the bankruptcy case. See 28 U.S.C. § 157(b), (c); Fietz v. Great W. Sav. (In re Fietz), 852 F.2d 455, 457 (9th Cir. 1988) (civil proceeding is "related to" a bankruptcy case if the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy).

## FIRST CAUSE OF ACTION
## VIOLATION OF CALIFORNIA HOMEOWNER BILL OF RIGHTS
### [Cal. Civ. Code §§ 2920.5, et seq.]
### (Against ALL DEFENDANTS except DUKE)

38.    Plaintiffs reallege and incorporate the allegations by this reference all the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

39.    Defendants and other lenders' practice of negotiating with homeowners in default on their loans for a loan modification while simultaneously advancing the foreclose process is commonly referred to as "dual tracking." Dual tracking has been heavily criticized by both state and federal legislators. In July 2012, California passed legislation referred to as the "California Homeowner Bill of Rights" ("HBOR"), which prohibits dual tracking.

40.    As of January 1, 2013, HBOR went into effect, offering homeowners greater protection during the foreclosure process. Cal. Civ. Code § 2923.6(b) (2013). Section 2923.6(b) states "it is the intent of the legislature that the mortgage servicer offer the borrower a loan modification or work out a plan if such a modification or plan is consistent with its contractual or other authority." The statute further provides that "if a borrower submits a complete application for a first lien loan modification . . . the mortgage servicer . . . **shall <u>not</u> record** a notice of default or **notice of sale, or <u>conduct a trustee's sale</u>, while the complete first lien loan modification application is pending**." Cal. Civ. Code § 2923.6(c) (2013). [emphasis added].

41.    Cal. Civ. Code § 2924.11 also clearly states the mortgage servicer "shall" promptly preserve the status quo in order to ensure no sale would occur in this circumstance.

42.    Also under this new law, the mortgage servicer must establish a single point of contact and provide one or more direct means of communication with the single point of contact. Cal. Civil Code § 2923.7(a). That contact shall be responsible for communicating the process for foreclosure prevention alternatives and coordinating receipt of all documents associated with same. *Id*. at (b)(1). Further, that single point of contact shall have access to all current information and timely provide same to adequately inform the borrower. *Id*. at (b)(2).

**ADVERSARY COMPLAINT**

43.    Further, the lender/servicer is **required to inform the borrower <u>in writing</u>** **that the modification proposal has been rejected or is no longer being considered** **before it may proceed with foreclosure**.  Cal. Civ. Code §2923.6(b). [emphasis added].

44.    Under Cal. *Civil Code* § 2924.10, "When a borrower submits a complete first lien modification application, or any document in connection with a first lien modification application, the mortgage servicer shall provide written acknowledgment of the receipt of the documentation *within five business days* of receipt. In its initial acknowledgment of receipt of the loan modification application, the mortgage servicer shall include the following information: (1) A description of the loan modification process, including an estimate of when a decision on the loan modification will be made after a complete application has been submitted by the borrower and the length of time the borrower will have to consider an offer of a loan modification or other foreclosure prevention alternative. (2) *Any deadlines, including deadlines to submit missing documentation, that would affect the processing of a first lien loan modification application*. (3) Any expiration dates for submitted documents. (4) *Any deficiency in the borrower's first lien loan modification application.* Cal. Civ. Code § 2924.10 (a) (2013) [emphasis added].

45.    *Civil Code* section 2923.6(e) provides that, "If the borrower's application for a first lien loan modification is denied, the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or, if a notice of default has already been recorded, record a notice of sale or conduct a trustee's sale until the later of: (1) Thirty-one days after the borrower is notified in writing of the denial. (2) *If the borrower appeals the denial pursuant to subdivision (d), the later of 15 days after the denial of the appeal or 14 days after a first lien loan modification is offered after appeal but declined by the borrower*, or, if a first lien loan modification is offered

and accepted after appeal, the date on which the borrower fails to timely submit the first payment or otherwise breaches the terms of the offer.

46.     Finally, the HBOR creates a private right of action for borrowers to seek injunctive relief or monetary damages: If a trustee's sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin the mortgage servicer from proceeding with foreclosure until the mortgage servicer corrects a material violation of the law. Cal. Civ. Code § 2924.12.

47.     Under Cal. Civ. Code § 2924.12(b), "After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 by that mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale. If the court finds that the material violation was intentional or reckless, or resulted from willful misconduct by a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent, the court may award the borrower the greater of treble actual damages or statutory damages of fifty thousand dollars ($50,000)."

48.     Defendants have completely failed to comply with or intentionally ignored the Homeowners Bill of Rights basic premise. They continued forward with foreclosure despite the Plaintiffs' timely submissions of several complete loan modification application, most recently in January 2017 which, under the HBOR justified a consideration and full review of the application, and a written denial by the Defendants as a condition of proceeding forward with the foreclosure.

49.     Moreover, Plaintiffs never received any correspondence from SHELLPOINT pursuant to *Civil Code* § 2924.10 which informed them of any missing

**ADVERSARY COMPLAINT**

documents from their application and providing a time to cure any deficiencies. Instead of complying with the statute, SHELLPOINT simply sent the **Exhibit "H"**, February 10, 2017 letter and proceeded forward with the sale, while shirking the obligation to provide an appeal period for the Plaintiffs to avail themselves of.

50.    SHELLPOINT then compounded the problem by providing incorrect information to the Plaintiffs in an effort to lull them into a sense of security, enabling the sale to take place without any protest by the Plaintiffs.

51.    Because Defendants clearly refused to postpone the sale date and provided inaccurate information regarding status of the Plaintiffs' application, they clearly acted in violation of section 2923.6, etc.

52.    As stated in *Singh v. Bank of America, et al*., case No. 2:13-CV-00729-MCE-AC (E.D. Cal. 2013), 2013 U.S. Dist. LEXIS 63127 (E.D. Cal. decided, May 2, 2013):

> "Defendant and other lenders' practice of negotiating with homeowners in default on their loans for a loan modification while simultaneously advancing the foreclose process is commonly referred to as "dual tracking." Dual tracking has been heavily criticized by both state and federal legislators. In July 2012, California passed legislation referred to as "The California Homeowner Bill of Rights" which prohibits dual tracking. As of January 1, 2013, "The California Homeowner Bill of Rights went into effect and it offers homeowners greater protection during the foreclosure process. Cal. Civ. Code § 2923.6(b) (2013). Section 2923.6(b) states "it is the intent of the legislature that the mortgage servicer offer the borrower a loan modification or work out a plan if such a modification or plan is consistent with its contractual or other authority." The statute further provides that "if a borrower submits a complete application for a first lien loan modification . . . the mortgage servicer . . . shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending." Cal. Civ. Code § 2923.6(c) (2013).

53.    Under Cal. Civ. Code § 2924.12(h), "The rights, remedies, and procedures provided by this section are in addition to and independent of any other rights, remedies, or procedures under any other law. Nothing in this section shall be construed to alter, limit, or negate any other rights, remedies, or procedures provided by law."

**ADVERSARY COMPLAINT**

54.    Under Cal. Civ. Code § 2924.12(i), "A court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section. A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or was awarded damages pursuant to this section."

55.    If Plaintiffs were provided with correct information regarding their application, they would have undoubtedly exercised their rights and undertaken other methods to deal with the loan including curing the small arrearage on the loan by borrowing money from family or friends or filing this Chapter 13 bankruptcy petition sooner in order to reorganize the debt prior to the sale, thereby preventing the sale entirely.

56.    Instead, Plaintiffs now face the loss of the Subject property and its sizable equity therein solely because of the conduct of Defendants.

57.    As a proximate result of the aforementioned actions by Defendants, Plaintiffs face the permanent loss of the Subject Property and the substantial equity therein and will thereby suffer economic loss in an amount to be determined at trial. In addition, they have had to incur substantial attorney's fees in connection with this action and their attempts to save their home and prevent their family from being rendered homeless, despite the violations outlined above.

### SECOND CAUSE OF ACTION
### WRONGFUL FORECLOSURE
### (Against All Defendants except DUKE)

58.    Plaintiffs reallege and incorporate by this reference all the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

59.    In California, the tort of wrongful foreclosure requires: (1) a legal duty owed to the Plaintiff by the foreclosing party; (2) a breach of that duty; (3) a causal connection between the breach of that duty and the injury the Plaintiff sustained; and (4) damages.

**ADVERSARY COMPLAINT**

*Munger v. Moore*, 11 Cal. App. 3d 1, 7 (Cal. Ct. App. 1970). California courts have further clarified this cause of action by stating: "a trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent or willfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust. *Id.*

60.   *Civil Code* sections 2924 through 2924k, "provide a comprehensive framework for the regulation of a non-judicial foreclosure sale pursuant to a power of sale contained in a deed of trust," *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830. "The statutes provide the trustor with opportunities to prevent foreclosure by curing the default. The trustor may make back payments to reinstate the loan up until five business days prior to the date of the sale, including any postponement. [Citations.] Additionally, the trustor has an equity of redemption under which the trustor may pay all amounts due at any time prior to the sale to avoid loss of the property. (§§ 2903, 2905)," *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 86-87.

61.   Further, "'It is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties.'" *Lo v. Jensen* (2001) 88 Cal.App.4th 1093, 1097-1098, *quoting Bank of America etc. Assn. v. Reidy* (1940) 15 Cal.2d 243, 248; *see also Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 700. Justifications for setting aside a trustee's sale from the reported cases, which satisfy the first element, include the trustee's or the beneficiary's failure to comply with the statutory procedural requirements for the notice or conduct of the sale. *Knapp, supra*, 123 Cal.App.4th at pp. 96-99.

62.   Here, Defendants wrongfully conducted the trustee's sale because, as described above, their unknown employees represented to Plaintiffs that that the trustee's

**ADVERSARY COMPLAINT**

sale would be postponed until and unless Plaintiffs was denied for a loan modification following a good faith review of their January 2017 application and any appeal was considered and denied as well.

63.     Instead of providing correct information to Plaintiffs or the required appeal period, Defendants proceeded with the foreclosure.  Once the alleged denial took place and the appeal period began to run, a legal and statutory duty was created between Defendants and Plaintiffs that was breached when the sale went forward in violation of the statute.

64.     As a proximate result of the wrongful conduct of Defendants, Defendants have foreclosed on the Subject Property and evicted Plaintiffs' family, thereby depriving Plaintiffs of the beneficial use and enjoyment thereof and causing damages in an undetermined amount subject to proof at trial.

**THIRD CAUSE OF ACTION**
**NEGLIGENCE**
**(Against All Defendants except DUKE)**

65.     Plaintiffs reallege and incorporate by this reference all the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

66.     To state a claim for negligence, a plaintiff must allege: (1) the defendant's legal duty of care to the plaintiff; (2) breach of that duty; (3) causation; and (4) resulting injury to the plaintiff. *Merrill v. Navegar, Inc.,* (2001) *26 Cal. 4th 465, 500*.

67.     As a general rule, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, (1991) 231 Cal. App. 3d 1089, 1095-96 (citations omitted). *However*, there are instances where the law imposes a duty on the lender. In California, the test for determining whether a duty exists between a lender and a borrower-client "`involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to

**ADVERSARY COMPLAINT**

affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.'" *Connor v. Great Western Sav. & Loan Ass'n*, (1968) 69 Cal. 2d 850, 865 (quoting *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958)); accord *Nymark*, 231 Cal. App. 3d at 1098.

68.    Additionally, United States District Courts in the Ninth Circuit have concluded a lender owes a borrower a duty of care in negotiating or processing an application for a loan modification. *See, e.g., Ansanelli v. JP Morgan Chase Bank, N.A.* (N.D.Cal., Mar. 28, 2011, No. C 10-03892 WHA) 2011 U.S.Dist. Lexis 32350, pp. *21-*22 (allegation that lender offered Plaintiffs a loan modification and "engage[d] with them concerning the trial period plan" was sufficient to create duty of care); *Becker v. Wells Fargo Bank, N.A., Inc.* (E.D.Cal., Nov. 30, 2012, No. 2:10-cv-02799 LKK KJN PS) 2012 U.S. Dist. Lexis 170729, pp. *34-*35 (complaint stated claim against lender for negligence during the loan modification process); *Crilley v. Bank of America, N.A.* (D. Hawaii, Apr. 26, 2012, No. 12-00081 LEK-BMK) 2012 U.S. Dist. Lexis 58469, p. *29 (denying motion to dismiss because Plaintiffs "have pled sufficient facts to support a finding that Defendant went beyond its conventional role as a loan servicer by soliciting Plaintiffs to apply for a loan modification and by engaging with them for several months" regarding the modification); *Garcia v. Ocwen Loan Servicing, LLC* (N.D. Cal., May 10, 2010, No. C 10-0290 PVT) 2010 U.S. Dist. Lexis 45375, pp. *7-*11 (Plaintiffs allegations of lender's conduct in handling application for loan modification pleaded a duty of care).

69.    Plaintiffs contend that Defendants, and each of them, owed a duty to Plaintiffs to act in good faith throughout their dealings with Plaintiffs, including but not limited to accurately providing all relevant information to Plaintiffs in connection with

**ADVERSARY COMPLAINT**

the above-described loan modification application, and to ensure that Plaintiffs' application was fully reviewed within a timely manner and further that while such review was being conducted, the sale would be postponed.

70.    Plaintiffs also contend that SHELLPOINT owed them an independent duty a result of the affirmative representations its employees made to them during the loan modification process.

71.    Plaintiffs also contend that Defendants, and each of them, owed them a general duty of due care, pursuant to California *Civil Code* Section 1714(a) to Plaintiffs not to cause them harm, injury or loss by the above-described bad faith acts (that, if they were intentional, would constitute fraud), and that said negligent acts, conduct or omissions to act or want of ordinary care or skill in its dealings with them during this entire period.

72.    As described above, Defendants have wholly failed to comply with the statutory scheme laid out in the HBOR and made certain representations to them verbally as well as through documentation and correspondence and to Plaintiffs and their agents regarding their loan modification efforts. Specifically, SHELLPOINT'S Loss Mitigation Department by and through its employees, made the false misrepresentations and omissions to Plaintiffs and their agents including but not limited to misrepresenting:

a.  the status of their loan modification application including the statements made to induce them to sit on their rights under the belief that the sale was going to be postponed until a decision was made either way;

b.  whether their application was complete;

c.  whether their application was actually being reviewed in good faith;

d.  the status of the foreclosure process for the Subject Property; and

e.  whether the sale date would be postponed until a decision was made on their January 2017 application.

73.    Plaintiffs also contend that the foregoing acts and conduct, misrepresentations, and/or omissions to act, by Defendants, and each of them, were done negligently and with want of ordinary care, and in so doing, breached its duty of due care they owed to Plaintiffs.

74.    Plaintiffs also contend that when Defendants' employees made said representations, they had no reasonable basis for them to be true and made them negligently to Plaintiffs without ever having any intention to reconvey the second loan to them – all so that Defendant could ultimately foreclose on their property. SHELLPOINT induced Plaintiffs to submit their application package and rely upon that process and in turn forgo other measures to cure the default so that SHELLPOINT could proceed to foreclose on the Subject Property.

75.    Each of these actions was done with the intent to affect Plaintiffs and their family, and it was reasonably foreseeable to Defendants and each of them that were they to violate such duty of care, that Plaintiff would rely upon its acts and representations to his detriment and that harm and loss would occur to Plaintiff.

76.    Moreover it is clear that Plaintiffs suffered damages as a result of the breach of duty by Defendants and each of them and that Defendants moral blame resulted in said damages to Plaintiffs and their family which could have been prevented had Defendants acted reasonably and were forthright with Plaintiffs regarding their intention to proceed forward with the foreclosure process rather than complete the loan modification process.

77.    Plaintiffs further contend that had Defendants, and each of them, acted reasonably and were forthright with regard to the foreclosure actually taking place despite the complete loan modification application in November 2014, then he and his wife would have made other arrangements to cure the default through other means and thereby prevented the foreclosure from taking place at all.

**ADVERSARY COMPLAINT**

78.    Plaintiffs contend that based on and in direct justifiable reliance upon the representations and omissions of Defendants, and each of them, Plaintiffs submitted all requested paperwork to SHELLPOINT and forewent the opportunity to stop the foreclosure sale through other means and now face a complete loss of the Subject Property and its equity, for which they have been forced to hire counsel at significant expense in order to force Defendants to honor said obligations and to save their home through litigation.

79.    As a further direct and proximate result of Defendants' unlawful conduct, Plaintiffs and their family members have suffered and continue to suffer serious emotional distress, humiliation, anguish, emotional and physical injuries, as well as economic losses, all to their damage in amounts to be proven at trial.

80.    As a further direct, proximate result of the negligence of Defendants, and each of them, Plaintiffs have therefore suffered damages in an amount to be determined but believed to exceed the jurisdictional minimums of this court.

**FOURTH CAUSE OF ACTION**
**JUDGMENT TO CANCEL TRUSTEE'S DEED UPON SALE**
**(Against All Defendants)**

81.    Plaintiffs reallege and incorporate by this reference all the allegations of the preceding paragraphs of this complaint as though fully set forth herein.

82.    Defendants may claim an estate or interest in the Subject Property described hereinabove adverse to that of Plaintiffs by virtue of a TDUS recorded in violation of the HBOR, but Defendants' claims are without any right because Defendants have no estate, right, title, or interest in the real property in light of the aforementioned statutory violations.

83.    The claims of Defendants are based on an alleged TDUS described hereinabove, and purporting to convey the property to Defendants.

84.    Although the TDUS once reviewed may appear valid on its face, based upon

**ADVERSARY COMPLAINT**

the aforementioned misconduct and omissions of Defendants it is invalid and void and of no legal force or effect regarding Plaintiff's interest in the Subject Property for the reasons set forth hereinabove.

85.    The estate or interest in the Subject Property claimed by Defendants, strips Plaintiff's rightful title, interest and equity in the Subject Property, restricts Plaintiffs' full use and enjoyment of the real property, and hinders Plaintiffs' right to unrestricted alienation of it.  If the TDUS is not canceled, there is an absolute certainty that Plaintiffs will suffer serious and irreparable injury.

## FIFTH CAUSE OF ACTION
### QUIET TITLE
### (Against Defendants DUKE and Does 6-10)

86.    Plaintiffs reallege and incorporate by this reference all the allegations of the preceding paragraphs of this complaint as though fully set forth herein.

87.    Plaintiffs seeks to quiet title against the ownership claim of Defendants as of the day prior to any alleged foreclosure sale because Defendants' claim is without any right and Defendants have no right, title, estate, lien, or interest in the Subject Property. The Subject Property is described above and in the **Exhibit "A"** Deed of Trust.

88.    Plaintiffs claim the right to title to the Subject Property because of the aforementioned statutory violations which resulted in the alleged foreclosure sale which make the sale *void ab initio*.

89.    Plaintiffs name as Defendants in this action all persons unknown claiming (a) any legal or equitable right, title, estate, lien, or interest in the Subject Property adverse to Plaintiff's title, or (b) any cloud on Plaintiff's title to the Subject Property. The claims of each unknown Defendant are without any right, and these Defendants have no right, title, estate, lien, or interest in the Subject Property.

90.    Plaintiffs desire and are entitled to a judicial declaration quieting title to the

**ADVERSARY COMPLAINT**

Subject Property in Plaintiffs' favor as of the day before the Trustee's Sale, and restoring possession to Plaintiffs.

## SIXTH CAUSE OF ACTION
## DECLARATORY RELIEF
### (Against All Defendants)

91.    Plaintiffs reallege and incorporate by this reference all the allegations of the preceding paragraphs of this complaint as though fully set forth herein.

92.    An actual controversy has arisen and now exists between Plaintiffs and Defendants regarding Defendants' authority to conduct a foreclosure sale against the Subject Property.

93.    Plaintiffs contend that as a result of the common law and statutory violations identified hereinabove, Defendants had an obligation to rescind any TDUS and restore title to their name and complete their loan modification review, and further contend that Defendants so far have failed to do so.

94.    Defendants are expected to claim that they are entitled to foreclose based on Plaintiffs' failure to make the subject loan payments, despite the fallacy of such claim, particularly in light of the express HBOR requirements.  Defendants are also expected to argue that all statutory procedures were followed and the subject instruments are valid and lawfully recorded and that nothing was done to affect their interest in the Subject Property.

95.    Plaintiffs therefore desire and are entitled to a judicial determination of the parties' rights and duties, and a declaration as to whether Defendants have a duty to rescind the subject trustee's sale and to correct the aforementioned violations. A judicial determination is needed because Defendants are anticipated to attempt to sell the Subject Property to a third party, which will permanently deprive them of the equity, title and use and enjoyment thereof.

## SEVENTH CAUSE OF ACTION
## UNFAIR, UNLAWFUL FRAUDULENT AND DECEPTIVE BUSINESS

**ADVERSARY COMPLAINT**

**PRACTICES**
**(B & P Code §§ 17200, et seq.)**
**(Against All Defendants except DUKE)**

96.    Plaintiffs reallege and incorporate the allegations by this reference all the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

97.    At all times mentioned herein, *Business and Professionals Code* § 17200, et seq. (collectively the "UCL") was in full force and effect and was binding on Defendants. Said sections require Defendants to refrain from unfair, unlawful, fraudulent and deceptive business practices.

98.    The UCL permits civil recovery for "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising...." (Bus. & Prof.Code, § 17200.) "'Because *Business and Professions Code* section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent....' " (*Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527.)

99.    By defining "unfair competition" to include any unlawful act or practice, the UCL permits violations of other laws to be treated as independently actionable as unfair competition. (*Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra*, 20 Cal.4th at p. 180, 83 Cal.Rptr.2d 548, 973 P.2d 527.) " '[A]n "unfair" business practice occurs when that practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." [Citation.]' [Citation.]" (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 719, 113 Cal.Rptr.2d 399.)

100.    An unfair business practice also means "'the public policy which is a predicate to the action must be "tethered" to specific constitutional, statutory or

**ADVERSARY COMPLAINT**

regulatory provisions.' " (Scripps Clinic v. Superior Court (2003) 108 Cal.App.4th 917, 940, 134 Cal.Rptr.2d 101.) A fraudulent practice under the UCL "require [s] only a showing that members of the public are likely to be deceived" and "can be shown even without allegations of actual deception, reasonable reliance and damage." (*Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal.App.4th 824, 838, 51 Cal.Rptr.3d 118.)

101.    Plaintiffs are informed and believes, and based upon such information and belief, herein alleges that each of the acts of Defendants, and each of them, as set forth hereinabove in this Complaint including the aforementioned statutory violations constitutes unlawful, unfair and fraudulent business acts or practices within the meaning of California *Business and Professions Code* Section 17200, et seq.

102.    In numerous instances, Defendants have made or disseminated untrue or misleading statements with respect to the loan modification review received prior to the proposed foreclosure sale including with regard to status of Plaintiff's application and the reasons for the alleged denial of a loan modification.

103.    Additionally, in numerous instances, as mentioned above, SHELLPOINT and its agents violated the legislatively enacted Homeowners Bill of Rights and caused the principal residence and home of Plaintiffs to be the subject of a foreclosure sale by TRUSTEE on behalf of SHELLPOINT which actively engaged in deceiving and misleading the Plaintiffs prior to the foreclosure sale.

104.    Plaintiffs are informed and believes, and based upon such information and belief, herein alleges that as a result of Defendants' and each of their unlawful, unfair and fraudulent practices, and given the unique quality and nature of the Subject Property, Plaintiffs are without an adequate remedy at law and is entitled to equitable relief enjoining Defendants' continuing unlawful acts against them and other consumers who are similarly situated.

**ADVERSARY COMPLAINT**

105.   Plaintiffs are informed and believe, and based upon such information and belief, herein allege that as a result of all Defendants' and each of their unfair competition and unlawful acts, Plaintiff is entitled to such orders or judgment, including the appointment of a receiver, as may be necessary to prevent the use or employment by the Defendants of any practice which unlawful, unfair and fraudulent practices.

106.   Plaintiffs are informed and believe, and based upon such information and belief, herein allege that as a result of Defendants' and each of their actions, Plaintiffs have suffered damages and are entitled to general, special, consequential and incidental damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:**

    1.    For actual damages according to proof;

    2.    For compensatory damages as permitted by law;

    3.    For consequential damages as permitted by law;

    4.    For statutory damages as permitted by law;

    5.    For equitable relief as permitted by law;

    6.    For injunctive relief as permitted by law;

    7.    For interest as permitted by law;

    8.    For reasonable attorneys' fees and costs;

    9.    For such other and further relief as this Court deems just and proper.

Dated: March 28, 2017                    SIMON RESNIK HAYES LLP


                                  __/s/ Matthew D. Resnik_____
                                  Matthew D. Resnik,
                                  David M. Kritzer,
                                  Attorney for Debtors/Plaintiffs

**ADVERSARY COMPLAINT**

Exhibit "A"

5/25/05

𝒱

05 1221361

UNITED TITLE COMPANY/L.A.

Recording Requested By:
**WILMINGTON FINANCE, INC.**

Return To:
Wilmington Finance, a division of AIG Federal Savings Bank

401 Plymouth Road, Suite 400
Plymouth Meeting, PA  19462

Prepared By:

Wilmington Finance, div. of AIG FSB
401 Plymouth Road, Suite 400
Plymouth Meeting, PA 19462
877-963-4968

10504516-5

─────[Space Above This Line For Recording Data]─────

# DEED OF TRUST

LOAN NO.:  D05041303
ESCROW NO.:  2212-VQ

MIN    100372405040042037
MERS Phone: 1-888-679-6377

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated    MAY 14, 2005
together with all Riders to this document.
**(B) "Borrower"** is
**RODOLFO ROSALES AND ROSA MARIA HINOJOSA, HUSBAND AND WIFE AS JOINT TENANTS**

Borrower's address is 7921 BAKMAN AVENUE, LOS ANGELES (SUN VALLEY AREA), CA  91352
Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
Wilmington Finance, a division of AIG Federal Savings Bank

Lender is a  **FEDERAL SAVINGS BANK**
organized and existing under the laws of  **UNITED STATES OF AMERICA**

Initials  *R.H*

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3005  1/01
VMP-6A(CA) (0207)                    Page 1 of 15    LENDER SUPPORT SYSTEMS, INC MERS6ACA.NEW (06/03)

5/25/05

3

Lender's address is
401 Plymouth Road, Suite 400, Plymouth Meeting, PA 19462

**(D) "Trustee"** is
UNITED TITLE COMPANY

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated    MAY 14, 2005
The Note states that Borrower owes Lender

TWO HUNDRED EIGHTY FIVE THOUSAND AND NO/100 X X X X X X X X X X X X X X X X X X X X X    Dollars
(U.S. $ 285,000.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    JUNE 01, 2035

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "RIDERS"** means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Condominium Rider                ☐ 1-4 Family Rider
☐ Graduated Payment Rider      ☐ Planned Unit Development Rider   ☐ Biweekly Payment Rider
☐ Balloon Rider                ☐ Rate Improvement Rider          ☐ Second Home Rider
☐ Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials

VMP-6A(CA) (0207)          Page 2 of 15          Form 3005  1/01

05  1221361

5/25/05

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
    **COUNTY**                                  of                      **LOS ANGELES**                      :
    [Type of Recording Jurisdiction]                                  [Name of Recording Jurisdiction]

**SEE COMPLETE LEGAL DESCRIPTION DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.**

Parcel ID Number:  2314-014-023                               which currently has the address of
                              **7921 BAKMAN AVENUE**                                            [Street]
        **LOS ANGELES (SUN VALLEY AREA)**                  [City], California        91352        [Zip Code]
("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

VMP-6A(CA) (0207)                              Page 3 of 15                              Initials
                                                                                        Form 3005  1/01

**05 1221361**

5/25/05

*5*

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

VMP-6A(CA) (0207)                    Page 4 of 15                    Initials: _P.H. R.H_
                                                                      Form 3005 1/01

05 1221361

5/25/05

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

VMP-6A(CA) (0207)                        Page 5 of 15                        Initials: _____
                                                                            Form 3005  1/01

05 1221361

5/25/05

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

VMP-6A(CA) (0207)                     Page 0 of 15                     Form 3005  1/01

05  1221361

5/25/05

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

VMP-6A(CA) (0207)                          Page 7 of 15                          Initials: _____   R.H

                                                                                 Form 3005  1/01

**05  1221361**

5/25/05

9

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

VMP-6A(CA) (0207)                          Page 8 of 15                          Initials: _RK_ _RH_
                                                                                 Form 3005  1/01

05  1221361

5/25/05

10

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

VMP-6A(CA) (0207)                        Page 9 of 15                        Initials: _____
                                                                              Form 3005 1/01

05 1221361

5/25/05

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

VMP-6A(CA) (0207)                        Page 10 of 15                        Form 3005  1/01

05 1221361

5/25/05

$\mathcal{V}$

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

VMP-6A(CA) (0207)                    Page 11 of 15                    Initials: _PK_ _R.H._                    Form 3005  1/01

05 1221361

5/25/05

13

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

VMP-6A(CA) (0207)                    Page 12 of 15                    Initials _____    Form 3005  1/01

05 1221361

Branch :PTE,User :DMOO                    Comment:                                   Station Id :L6VE

5/25/05

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

VMP-6A(CA) (0207)                    Page 13 of 15                    Initials ___ L.H.
                                                                      Form 3005  1/01

05  1221361

5/25/05

15

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any RIDER executed by Borrower and recorded with it.

Witnesses:

_____
                    -Witness

_____
                    -Witness

_____(Seal)          _____(Seal)
RODOLFO ROSALES        -Borrower     ROSA MARIA HINOJOSA       -Borrower

_____(Seal)          _____(Seal)
                       -Borrower                              -Borrower

_____(Seal)          _____(Seal)
                       -Borrower                              -Borrower

_____(Seal)          _____(Seal)
                       -Borrower                              -Borrower

VMP-6A(CA) (0207)              Page 14 of 15              Form 3005  1/01

05 1221361

5/25/05

State of   CALIFORNIA
County of Los Angeles                          } ss.

On  MAY 14, 2005          before me, Marsia Lopez, Notary Public
                                                           personally appeared

**RODOLFO ROSALES AND ROSA MARIA HINOJOSA**

                                                                    , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

MARSIA LOPEZ
Commission # 1446565
Notary Public - California
Los Angeles County
My Comm. Expires Oct 21, 2007

_____ (Seal)

VMP-6A(CA) (0207)                        Page 15 of 15                        Form 3005  1/01

05 1221361

5/25/05

ORDER NO   10504516-5

*17*

## EXHIBIT "A"

LOT 22 OF TRACT NO. 16328, IN THE CITY OF LOS ANGELES,
COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AS PER MAP
RECORDED IN BOOK 485 PAGE (S) 5 TO 7 INCLUSIVE OF MAPS, IN
THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

05 1221361

-3-

Exhibit "B"

 

This page is part of your document - DO NOT DISCARD



## 20121581201



**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**10/18/12 AT 02:45PM**

Pages:
0003

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



LEADSHEET



201210180770057

00006561467



004337644

SEQ:
01

ERDS - Daily



THIS FORM IS NOT TO BE DUPLICATED

E13



Recording Requested By:
**Bank of America**
Prepared By:  Danilo Cuenca
1800 Tapo Canyon Road
Simi Valley, CA 93063
800-444-4302
When recorded mail to:
CoreLogic
Mail Stop: ASGN
1 CoreLogic Drive
Westlake, TX 76262-9823

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

DocID#    13810868269413314
Property Address:
**7921 Bakman Ave**
**Sun Valley, CA 91352-4428**
CA0-ADT  19931693  E  9/24/2012

This space for Recorder's use

MIN #: 100372405040042037          MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 1901 E Voorhees Street, Suite C, Danville, IL 61834 does hereby grant, sell, assign, transfer and convey unto **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2005-BC5** whose address is C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Original Lender: | **WILMINGTON FINANCE, A DIVISION OF AIG FEDERAL SAVINGS BANK** |
| Original Borrower(s): | **RODOLFO ROSALES AND ROSA MARIA HINOJOSA, HUSBAND AND WIFE AS JOINT TENANTS** |
| Original Trustee: | **UNITED TITLE COMPANY** |
| Date of Deed of Trust: | **5/14/2005** |
| Original Loan Amount: | **$285,000.00** |

Recorded in Los Angeles County, CA on: **5/25/2005**, book N/A, page N/A and instrument number **05 1221361**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
~~SEP 2 8 2012~~

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____
Talisha      Wallace Assistant Secretary

State of **California**
County of Ventura

On ___SEP 2 8 2012___ before me, _____Danya Bucaro_____, Notary Public, personally appeared
_____Talisha Wallace_____
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity
(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under **PENALTY OF PERJURY** under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

*[signature]*

Notary Public: ___Danya Bucaro___
My Commission Expires: __March 15, 2014__

```
         DANYA BUCARO
      Commission # 1880386
      Notary Public - California
        Los Angeles County
    My Comm. Expires Mar 15, 2014
```

(Seal)

---

DocID#    13810868269413314

Exhibit "C"

**This page is part of your document - DO NOT DISCARD**



## 20150927647

 

**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**07/30/15 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201507300130007

00010935234



006992978

**SEQ:**
**01**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**          T39



RECORDING REQUESTED BY:

Old Republic Default Management Services

AND WHEN RECORDED MAIL TO:

New Penn Financial, LLC d/b/a
Shellpoint Mortgage Servicing
55 BEATTIE PLACE
SUITE 110 MAIL STOP 005
GREENVILLE, SC 29601



07/30/2015

*20150927647*

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: 2314-014-023   TS No.: 15-54352   TSG Order No.: 02-15028696   Loan No: 0555854412

## SUBSTITUTION OF TRUSTEE

WHEREAS, RODOLFO ROSALES AND ROSA MARIA HINOJOSA, HUSBAND AND WIFE AS
JOINT TENANTS was the original Trustor, UNITED TITLE COMPANY was the original Trustee, and
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR
WILMINGTON FINANCE A DIVISION OF AIG FEDERAL SAVINGS BANK was the original Beneficiary
under that certain Deed of Trust dated 5/14/2005 and recorded on 5/25/2005 as Instrument No. 05-1221361 , in
Book --, Page -- of Official Records of Los Angeles County, California, and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and
instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned hereby substitutes Old Republic National Title Insurance
Company, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular
number includes the plural.

Branch :PTE,User :DMOO                                    Station Id :L6VE

3

TS No.: 15-54352
Loan Number: 0555854412

**Substitution of Trustee**

Dated:   7/27/2015

New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing as
servicer for THE BANK OF NEW YORK MELLON FKA THE
BANK OF NEW YORK, AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF THE CWABS INC., ASSET-
BACKED CERTIFICATES, SERIES 2005-BC5

Name:   Jason Ossery
Title:   Foreclosure Specialist

A notary public or other officer completing this certificate
verifies only the identity of the individual who signed the
document, to which this certificate is attached, and not the
truthfulness, accuracy, or validity of that document

State of  Texas
County of  Harris

On  7/27/15  before me,  Sophia Martinez  Notary Public personally appeared,
Jason Ossery  who identified her/himself to be the foreclosure specialist of
New Penn Financial LLC DBA Shellpoint Mortgage Servicing  who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of  Texas  that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature  Sophia Martinez  (Seal)

SOPHIA MARTINEZ
Notary Public
STATE OF TEXAS
My Comm. Exp. January 28, 2019

Exhibit "D"

This page is part of your document - DO NOT DISCARD

**20151354614**







**Pages:**
**0002**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**11/05/15 AT 08:00AM**

| | | |
|---|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**LEADSHEET**



**201511050160009**

**00011339138**



**007205616**

**SEQ:**
**07**

DAR - Title Company  (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T39



Branch :PTE,User :DMOO                                                                                          Station Id :L6VE

11/05/2015

*20151354614*

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

TRUSTEE CORPS
17100 Gillette Ave
Irvine, CA 92614

APN: 2314-014-023                TS No: CA08003183-15-1-FT                TO No: 02-15036719

## SUBSTITUTION OF TRUSTEE

WHEREAS, RODOLFO ROSALES AND ROSA MARIA HINOJOSA, HUSBAND AND WIFE AS JOINT TENANTS was the original Trustor(s), UNITED TITLE COMPANY was the original Trustee and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for WILMINGTON FINANCE, A DIVISION OF AIG FEDERAL SAVINGS BANK, its successors and assigns, was the original Beneficiary under that certain Deed of Trust dated May 14, 2005 and recorded on May 25, 2005 as Instrument No. 05 1221361 of official records in the Office of the Recorder of Los Angeles County, California;

WHEREAS, the undersigned current Beneficiary, desires to substitute a new Trustee under said Deed of Trust in place of and instead of said original Trustee, or Successor Trustee, thereunder in the manner in said Deed of Trust provided;

NOW THEREFORE, The Bank of New York Mellon FKA The Bank of New York as Trustee for the Certificateholders of the CWABS, Inc. Asset-Backed Certificates, Series 2005-BC5 hereby substitutes MTC Financial Inc. dba Trustee Corps, whose address is 17100 Gillette Ave, Irvine, CA 92614, as Trustee under said Deed of Trust.

Dated: 10/29/15

New Penn Financial, LLC dba Shellpoint Mortgage Servicing as Servicer for The Bank of New York Mellon FKA The Bank of New York as Trustee for the Certificateholders of the CWABS, Inc. Asset-Backed Certificates, Series 2005-BC5

By: Jay Wilson
Foreclosure Specialist

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF Texas

COUNTY OF Harris

On 10/29/15 before me, Suzette Figaro Notary Public, personally appeared Jay Wilson who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Texas that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public Signature

SUZETTE FIGARO
Notary Public, State of Texas
My Commission Expires
February 26, 2017

Exhibit "E"



This page is part of your document - DO NOT DISCARD



## 20151560744



Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/11/15 AT 08:00AM**

Pages:
0004

| | |
|---|---|
| FEES: | 31.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 31.00 |



LEADSHEET



201512110160014

00011473905



007268815

SEQ:
01

DAR - Title Company (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED



T39

RECORDING REQUESTED BY:

12/11/2015

*20151560744*

WHEN RECORDED MAIL TO:

Trustee Corps
17100 Gillette Ave
Irvine, CA 92614

APN: 2314-014-023                    TS No: CA08003183-15-1                    TO No: 02-15036719

### NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

(The above statement is made pursuant to CA Civil Code Section 2923.3(c)(1). The Summary will be provided
to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(c)(2).)

### IMPORTANT NOTICE

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this Notice of Default may be recorded (which date of recording appears on this notice).

This amount is **$18,274.18** as of December 9, 2015, and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or Mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the Note and Deed of Trust or Mortgage, the Beneficiary or Mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the Beneficiary or Mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the Beneficiary or Mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your Beneficiary or Mortgagee may mutually agree in writing prior to the time the Notice of Sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits

*3*

APN: 2314-014-023                   TS No: CA08003183-15-1                   TO No: 02-15036719

a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: **The Bank of New York Mellon FKA The Bank of New York as Trustee for the Certificateholders of the CWABS, Inc. Asset-Backed Certificates, Series 2005-BC5 c/o MTC Financial Inc. dba Trustee Corps** located at 17100 Gillette Ave Irvine, CA 92614 Phone: 949-252-8300 TDD: 866-660-4288 Ref No: CA08003183-15-1

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

**NOTICE IS HEREBY GIVEN THAT:** MTC Financial Inc. dba Trustee Corps is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated as of May 14, 2005, executed by RODOLFO ROSALES AND ROSA MARIA HINOJOSA, HUSBAND AND WIFE AS JOINT TENANTS, as Trustor(s), to secure obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for WILMINGTON FINANCE, A DIVISION OF AIG FEDERAL SAVINGS BANK, the original Beneficiary, recorded May 25, 2005, as Instrument No. 05 1221361, of the official records in the Office of the Recorder of Los Angeles County, California, as more fully described on said Deed of Trust. Including a Note(s) for the sum of $285,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: **THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON February 1, 2015 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND INTEREST, ALONG WITH LATE CHARGES, PLUS ALL OF THE TERMS AND CONDITIONS AS PER THE DEED OF TRUST, PROMISSORY NOTE AND RELATED LOAN DOCUMENTS.**

That by reason thereof, the present Beneficiary under such Deed of Trust, has executed and delivered to MTC Financial Inc. dba Trustee Corps, said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Where required by law, a declaration pursuant to California Civil Code Section 2923.5(b) or California Civil Code Section 2923.55 is attached.

Dated: December 9, 2015          MTC Financial Inc. dba Trustee Corps
                                 as Duly Appointed Successor Trustee

                                 By: Myron Ravelo, Authorized Signatory

MTC Financial Inc. dba Trustee Corps may be acting as a debt collector attempting to collect a debt. Any information obtained may be used for that purpose.

To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, a secured party retains rights under its security instrument, including the right to foreclose its lien.

4

## California Declaration of Compliance
### (Civ. Code § 2923.55(c))

Borrower(s):        RODOLFO ROSALES AND ROSA MARIA HINOJOSA, HUSBAND AND WIFE AS
                    JOINT TENANTS

Loan No.:

Property Address:   7921 BAKMAN AVENUE
                    SUN VALLEY, CA 91352

Trustee's Sale No.:

The undersigned declares as follows:

I am employed by the undersigned mortgage servicer, and I have reviewed its business records for the borrower's loan, including the borrower's loan status and loan information, to substantiate the borrower's present loan default and the right to foreclose. The information set forth herein is accurate, complete and supported by competent and reliable evidence that I have reviewed in the mortgage servicer's business records. Those records reflect *one* of the following.

☑    The mortgage servicer contacted the borrower to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by California Civil Code § 2923.55. Thirty days, or more, have passed since the initial contact was made.

☐    The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code § 2923.55(f) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have passed since these due diligence requirements were satisfied.

☐    The mortgage servicer was not required to comply with California Civil Code § 2923.55 because the individual does not meet the definition of a "borrower" under Civil Code §2920.5(c).

☐    No contact was made with the borrower pursuant to California Civil Code § 2923.55 because the above-referenced loan is not secured by a first lien mortgage or deed of trust that secures a loan described in California Civil Code § 2924.15(a)

Executed on August 20 2015, at Houston, TX

New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing

By: D. Kemp
    Name:  Dequita Kemp
    Title: Fulfillment

Exhibit "F"



**This page is part of your document - DO NOT DISCARD**



## 20161322984



**Pages:**
**0004**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**10/27/16 AT 08:00AM**

| | |
|---|---|
| FEES: | 31.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 31.00 |



**LEADSHEET**



**201610270110002**

**00012842756**



**007901956**

**SEQ:**
**01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**          02-15036719 

LOS ANGELES,CA                          Page 1 of 4                  Printed on 3/7/2017 4:49:38 PM
Document: NT 2016.1322984

Branch :PTE,User :DMOO                                    Comment:                                    Station Id :L6VE

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

Trustee Corps
17100 Gillette Ave
Irvine, CA 92614

---

APN: 2314-014-023                    TS No: CA08003183-15-1                    TO No: 02-15036716

## NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY
(The above statement is made pursuant to CA Civil Code Section 2923.3(d)(1). The Summary will be provided
to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(d)(2).)

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED May 14, 2005. UNLESS YOU TAKE
ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT
A LAWYER.**

**On November 23, 2016 at 09:00 AM, near the fountain located in the Civic Center Plaza, 400 Civic
Center Plaza, Pomona, CA 91766, MTC Financial Inc. dba Trustee Corps, as the duly Appointed
Trustee, under and pursuant to the power of sale contained in that certain Deed of Trust recorded on May
25, 2005 as Instrument No. 05 1221361, of official records in the Office of the Recorder of Los Angeles
County, California, executed by RODOLFO ROSALES AND ROSA MARIA HINOJOSA, HUSBAND AND
WIFE AS JOINT TENANTS, as Trustor(s), in favor of MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. as nominee for WILMINGTON FINANCE, A DIVISION OF AIG FEDERAL SAVINGS
BANK as Beneficiary, WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER, in lawful money of
the United States, all payable at the time of sale, that certain property situated in said County, California
describing the land therein as: AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST**

The property heretofore described is being sold "as is".   The street address and other common
designation, if any, of the real property described above is purported to be: **7921 BAKMAN AVENUE,
LOS ANGELES (SUN VALLEY AREA), CA 91352**

---

LOS ANGELES,CA                         Page 2 of 4                    Printed on 3/7/2017 4:49:38 PM
Document: NT 2016.1322984

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be made without covenant or warranty, express or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the Note(s) secured by said Deed of Trust, with interest thereon, as provided in said Note(s), advances if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

The total amount of the unpaid balance of the obligations secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of this Notice of Trustee's Sale is estimated to be $282,615.93 (Estimated). However, prepayment premiums, accrued interest and advances will increase this figure prior to sale. Beneficiary's bid at said sale may include all or part of said amount. In addition to cash, the Trustee will accept a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union or a check drawn by a state or federal savings and loan association, savings association or savings bank specified in Section 5102 of the California Financial Code and authorized to do business in California, or other such funds as may be acceptable to the Trustee. In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed Upon Sale until funds become available to the payee or endorsee as a matter of right. The property offered for sale excludes all funds held on account by the property receiver, if applicable.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.**

## Notice to Potential Bidders

If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a Trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a Trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same Lender may hold more than one mortgage or Deed of Trust on the property.

TS No: CA08003183-15-1

## Notice to Property Owner

The sale date shown on this Notice of Sale may be postponed one or more times by the Mortgagee, Beneficiary, Trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about Trustee Sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call In Source Logic at 702-659-7766 for information regarding the Trustee's Sale or visit the Internet Web site address listed below for information regarding the sale of this property, using the file number assigned to this case, CA08003183-15-1. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

Date: October 21, 2016

MTC Financial Inc. dba Trustee Corps
TS No. CA08003183-15-1
17100 Gillette Ave
Irvine, CA 92614
Phone: 949-252-8300
TDD: 866-660-4288

Stephanie Hoy, Authorized Signatory

**SALE INFORMATION CAN BE OBTAINED ON LINE AT www.insourcelogic.com
FOR AUTOMATED SALES INFORMATION PLEASE CALL:
In Source Logic AT 702-659-7766**

- Trustee Corps may be acting as a debt collector attempting to collect a debt.
Any information obtained may be used for that purpose.

**To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, a secured party retains rights under its security instrument, including the right to foreclose its lien.**

TS No: CA08003183-15-1

Exhibit "G"

P.O. Box 10826
TROY, MI 48099-1410
RETURN SERVICE REQUESTED



## Shellpoint
### Mortgage Servicing

**Phone Number: 866-825-2174**
**Fax: 866-467-1187**
**Email: Lossmitigation@shellpointmtg.com**

Mon - Thurs: 8:00AM-6:00PM
Fri: 8:00AM-5:00PM

ˡᵖˡⁱˡᵖˡⁱˡᵖˡⁱˡᵖˡⁱ···ᵖˡˡˡˡˡˡᵖᵖ···ˡᵖˡⁱˡᵖⁱˡˡᵖ···ᵖᵖˡˡ···ᵖˡˡˡᵖˡˡˡᵖˡ·ˡˡ
S-SFRECS20 L-1048 R-106
P6HFZ800300578 - 506801101 I01156
RODOLFO ROSALES
ROSA HINOJOSA
7921 BAKMAN AVE
SUN VALLEY CA 91352-4428

| Loan Number: | 0555854412 |
|---|---|
| Principal Balance: | $260,863.84 |
| Property: | 7921 Bakman Avenue Sun Valley, CA 91352 |

01/04/2017

Dear Borrower(s),

Shellpoint Mortgage Servicing ("Shellpoint") is committed to helping you retain your home. We are currently evaluating your mortgage for eligibility in one of Shellpoint's loss mitigation programs.

Your loan has been referred to foreclosure, and Shellpoint may continue the foreclosure process (where applicable) while we evaluate your loan. However, upon receipt of your complete package, Shellpoint will expedite it's evaluation process to determine your eligibility in advance of your scheduled foreclosure sale date of 01/23/2017. If your foreclosure process has been initiated, we may be unable to stop a sale where a court with jurisdiction over the foreclosure proceeding (if any) or public official charged with carrying out the activity could fail or refuse to halt a scheduled foreclosure sale.

Shellpoint will contact you about any required documents we may still need in order to fully review your loan. **All documents must be no older than 90 days at the time the complete package is received.**

**Eligibility**

If you are eligible for a loss mitigation program, you will be notified of this decision and will be sent instructions explaining the terms of the program as well as the next steps you will need to take in order to enter the program.

If you do not qualify for a loss mitigation program, or if you fail to comply with the program terms, you will be sent a notice informing you of such. In most cases, you will have 30 days to contact us to discuss alternative loss mitigation options or any other concerns you may have. During this 30-day review period, we may continue with any pending foreclosure action. However, no foreclosure sale will be conducted during this 30-day review period.

*We may order an appraisal to determine the property's value and charge you for this appraisal. We will promptly give you a copy of any appraisal, even if you are not approved for Loss Mitigation. You can pay for an additional appraisal for your own use at your own cost.*

**Do not ignore foreclosure notices**

You may receive foreclosure/eviction notices – delivered by mail or in person – or see actions taken to proceed with a foreclosure sale of your home.

While you will not lose your home during the evaluation, to protect your rights under applicable foreclosure law, you may need to respond to any foreclosure notices you receive or take other actions as appropriate.

**Questions**

If you have any questions about the foreclosure process or the evaluation of your request, contact us at **866-825-2174** or visit our website at www.shellpointmtg.com. If you do not understand the legal consequences of the foreclosure, you are also encouraged to contact a lawyer or housing counselor for assistance.

If you need further counseling, you may also call the Homeowner's HOPE™ Hotline at (888) 995-HOPE (4673). This hotline can help with questions about the government program and offers free HUD-certified counseling services in English and Spanish.

Sincerely,

Shellpoint Mortgage Servicing

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

Exhibit "H"

P.O. BOX 1410
TROY, MI 48099-1410
RETURN SERVICE REQUESTED

# Shellpoint
## Mortgage Servicing

Mon - Thurs: 8:00AM-6:00PM
Fri: 8:00AM-5:00PM

Phone Number: 866-825-2174
Fax: 866-467-1187
Email: Lossmitigation@shellpointmtg.com

S-SFRECS20  L-1040  R-106
P6MJ8000200023 - 509868249 I00046
RODOLFO ROSALES
ROSA HINOJOSA
7921 BAKMAN AVE
SUN VALLEY CA 91352-4428

| Loan Number: | 0555854412 |
|---|---|
| Principal Balance: | $260,863.84 |
| Property: | 7921 Bakman Avenue Sun Valley, CA 91352 |

02/10/2017

**Dear Rodolfo Rosales and Rosa Hinojosa:**

Shellpoint Mortgage Servicing ("Shellpoint") has reviewed your request for a loan modification in addition to other loss mitigation options.

We are unable to offer you a loss mitigation option because you did not provide us with the documents we requested. We have notified you of the specific documents we need and the time frames required to provide them to us.

If you have questions about this letter and how to reinstate your mortgage, please contact us at 866-825-2174. Once you reinstate your loan, if you subsequently experience a financial hardship, please contact us to request reconsideration for mortgage payment assistance or other foreclosure prevention alternative.

Sincerely,
Shellpoint Mortgage Servicing

Exhibit "I"

**This page is part of your document - DO NOT DISCARD**

# 20170260876




Pages:
0003

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**03/07/17 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 2,150.40 |
| OTHER: | 0.00 |
| PAID: | 2,171.40 |



**LEADSHEET**



201703070150015

00013439832



008185960

**SEQ:
01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

169_1491109_4_-_

Fidelity National Title Company

RECORDING REQUESTED BY:

WHEN RECORDED MAIL DEED
AND TAX STATEMENT TO:

DUKE PARTNERS II, LLC
2015 MANHATTAN BEACH BLVD SUITE 100
REDONDO BEACH, CA 90278

---

APN: 2314-014-023          TS No: CA08003183-16-1          TO No: 02-15036719

7921 BAKMAN AVENUE
LOS ANGELES (SUN VALLEY      **TRUSTEE'S DEED UPON SALE**
AREA), CA 91352

The undersigned Grantor, under penalty of perjury, declares:

1) The Grantee herein was not the foreclosing beneficiary.
2) The amount of the unpaid debt together with costs was:     **$289,734.05**
3) The amount paid by the Grantee at the trustee sale was:     **$384,000.00**
4) The documentary transfer tax is:                           $ 422.40 / $1,728.00
5) Said property is in the city of: LOS ANGELES (SUN VALLEY AREA)
6) A.P.N. 2314-014-023

and **MTC Financial Inc. dba Trustee Corps**, herein called "Trustee", as Trustee (or as Successor
Trustee) of the Deed of Trust hereinafter described, hereby grants and conveys, but without covenant or
warranty, express or implied, to **DUKE PARTNERS II, LLC**, herein called "Grantee", the real property in
the County of Los Angeles, State of California, described as follows:

Lot 22 of Tract No. 16328, in the City of Los Angeles, County of Los Angeles, State of California, as per
map recorded in Book 485 Page(s) 5 to 7 inclusive of Maps, in the Office of the County Recorder of said
County.

This deed is made pursuant to the authority and powers given to Trustee (or to Successor Trustee) by law
and by that certain Deed of Trust dated May 14, 2005, made to RODOLFO ROSALES AND ROSA MARIA
HINOJOSA, HUSBAND AND WIFE AS JOINT TENANTS and recorded on May 25, 2005, as Instrument
No. 05 1221361 of Official Records in the office of the Recorder of Los Angeles County, CA, Trustee (or
Successor Trustee) having complied with all applicable statutory provisions and having performed all of
his duties under the said Deed of Trust.

Accommodation Only

APN: 2314-014-023                    TS No: CA08003183-15-1                    TO No: 02-15036719

All requirements of law and of said Deed of Trust relating to this sale and to notice thereof having been
complied with. Pursuant to the Notice of Trustee's Sale, the above described property was sold by
Trustee (or Successor Trustee) at public auction on **February 22, 2017** at the place specified in said
Notice, to Grantee who was the highest bidder therefore, for **$384,000.00 cash**, in lawful money of the
United States, which has been paid.

Dated: _2/20/17_                    **MTC Financial Inc. dba Trustee Corps**

By: Stephanie Hoy, Authorized Signatory

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the
document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of CALIFORNIA
County of ORANGE

On _2-28-17_ before me, _____Jared Degener_____, a Notary
Public, personally appeared STEPHANIE HOY, who proved to me on the basis of satisfactory evidence to
be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature
on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of CALIFORNIA that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public Signature

JARED DEGENER
Notary Public - California
Orange County
Commission # 2147958
My Comm. Expires Apr 26, 2020

**B1040 (FORM 1040) (12/15)**

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

**PLAINTIFFS**

Rodolfo Rosales and
Rosa Maria Hinojosa

**DEFENDANTS**

NEW PENN FINANCIAL LLC, A Delaware Limited Liability Company dba SHELLPOINT MORTGAGE SERVICING; MTC FINANCIAL, INC., A California corporation doing business as TRUSTEE CORPS; THE BANK OF NEW YORK MELLON fka THE BANK OF NEW YORK, (hereinafter 'BONYM') as Trustee for THE CERTIFICATEHOLDERS OF THE CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2005-BC5; DUKE PARTNERS II, LLC, A Delaware Limited Liability Company; All Persons or Entities Unknown Claiming Any Legal Or Equitable Right, Title, Estate, Lien, Or Interest In The Property Described In The Complaint, Or Any Cloud On Title Thereto and Does 1 to 10, Inclusive,

**ATTORNEYS** (Firm Name, Address, and Telephone No.)

SIMON RESNIK HAYES LLP
15233 Ventura Blvd., Suite 250 Sherman Oaks, CA 91403
Tel: (818) 783-6251 Fax: (818) 783-6253

**ATTORNEYS** (If Known)

**PARTY** (Check One Box Only)
■ Debtor   □ U.S. Trustee/Bankruptcy Admin
□ Creditor   □ Other
□ Trustee

**PARTY** (Check One Box Only)
□ Debtor   □ U.S. Trustee/Bankruptcy Admin
■ Creditor   □ Other
□ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

1. 1. VIOLATION OF CALIFORNIA HOMEOWNER BILL OF RIGHTS [Cal. Civ. Code §§ 2920.5, et seq.]; 2. WRONGFUL FORECLOSURE; 3. NEGLIGENCE; 4. JUDGMENT TO CANCEL TDUS;  5. QUIET TITLE; 6. DECLARATORY RELIEF; 7. UNLAWFUL BUSINESS PRACTICES [Cal. Bus. & Prof Code §17200, et seq.]

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
□ 11-Recovery of money/property - §542 turnover of property
□ 12-Recovery of money/property - §547 preference
□ 13-Recovery of money/property - §548 fraudulent transfer
□ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
■ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
□ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
□ 41-Objection / revocation of discharge -§727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
□ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
□ 66-Dischargeability -§523(a)(1),(14),(14A) priority tax claims
□ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
□ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
□ 61-Dischargeability - §523(a)(5), domestic support
□ 68-Dischargeability - §523(a)(6), willful and malicious injury
□ 63-Dischargeability - §523(a)(8), student loan
□ 64-Dischargeability - §523(a)(15), divorce or separation obligation
    (other than domestic support)
□ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
□ 71-Injunctive relief – imposition of stay
□ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
□ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
□ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
□ 01-Determination of removed claim or cause

**Other**
□ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
□ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ■ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand  $ |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Rodolfo Rosales and Rosa Maria Hinojosa | BANKRUPTCY CASE NO.<br>1:17-bk-10482-MT | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>San Fernando Valley | NAME OF JUDGE<br>Honorable Maureen A. Tighe |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Matthew D. Resnik | | |
| DATE<br><br>March 28, 2017 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Matthew D. Resnik | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.